Jesse W. FRANKS; Central States Fire Insurance Company; Springfield Fire & Marine Insurance Company, Appellants,

v.

GROENDYKE TRANSPORT, Inc., Appellee.

No. 5171.

United States Court of Appeals Tenth Circuit.

Jan. 12, 1956.

Clarence N. Holeman, Wichita, Kan. (W. A. Kahrs and Robert H. Nelson, Wichita, Kan., were with him on the brief), for appellants.

Malcolm Miller, Wichita, Kan. (George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Robert N. Partridge and Robert M. Siefkin, Wichita, Kan., were with him ·on the brief), for appellee.

Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and CHRISTENSON, District Judge.

BRATTON, Chief Judge.

Jesse W. Franks instituted this action against Groendyke Transport, Inc., to recover damages for the destruction of property by fire. Central States Fire Insurance Company and Springfield Fire & Marine Insurance Company subsequently joined as parties plaintiff. The defendant denied liability and by cross-complaint sought to recover damages for injury to its property by the fire. The cause was tried to a jury. At the conclusion of all the evidence the court directed a verdict against the plaintiffs upon their cause of action and against the defendant upon the cause of action pleaded in the cross-complaint. Judgment was entered upon the verdict, and plaintiffs appealed.

The case falls within a narrow factual compass. There were admissions in the pleadings or evidence adduced upon the trial which tended to establish these facts. Franks owned a combination service station, grocery, restaurant, and home, located immediately adjacent to a highway in Kansas. Central States Fire Insurance Company and Springfield Fire & Marine Insurance Company each issued its policy of fire insurance covering some or all of such property, and after the fire to which reference is hereinafter made each company made payment under its policy. Groendyke was engaged in the business of delivering gasoline to others by means of motor transports. Harold Perkins was the agent and servant of Groendyke. Acting as such agent and servant, Perkins arrived at the filling station in a gasoline tank transport owned by Groendyke to make delivery of certain gasoline. It was a cloudy, rainy day. The transport was placed in proper position near the storage tanks belonging to Franks. Perkins and Franks cooperated in making the hose connection between a compartment of the transport and a storage tank belonging to Franks. The motor of the transport was left running in order to provide the necessary power to operate the pump which forced the gasoline from the compartment into the storage tank. After the pumping of the gasoline into the storage tanks had begun and while it was continuing, Perkins and Franks got into the cab of the transport and examined certain papers relating to the delivery and receipt of the gasoline. Nothing different or unusual about the unloading of the gasoline was observed by either of the parties. A customer arrived at the filling station. Franks got out of the cab of the transport, waited on the customer, and went inside to ring up the money. Shortly after Franks got out of the cab, Perkins got out, went to the rear of the transport, placed a ladder in an upright position against the truck, and climbed the ladder to see whether all of the ethyl gasoline had been pumped into the storage tank. As his head cleared the top of the rear compartment of the transport, he saw flames coming out of the ethyl tank belonging to Franks. He jumped from the transport and started towards its front. As he did so, he saw flames coming up over the cab of the transport. He then ran from the transport toward the road, circled around, went to the filling station, and helped in the effort to control or extinguish the fire. After waiting on the customer, Franks went inside the building and rang up the money. His wife was there. Both of them saw the fire at about the same time. When they first saw the fire, it was burning or rolling up around the cab of the truck. No one testified that he saw the fire start or knew its origin. The property belonging to Franks was destroyed and the transport belonging to Groendyke was damaged.

■■ Appellants predicate error upon the action of the court in directing a verdict in favor of the appellee. It is argued that the evidence established a prima facie case against the appellee and that the case should have been submitted to the jury. It is the general rule in the federal courts that on motion

for a directed verdict, the evidence and the inferences which may be fairly drawn from the evidence must be considered in the light most favorable to the party against whom the motion is directed; and that if the evidence and the inferences viewed in that manner are of such character that reasonably minded persons in the exercise of fair and impartial judgment may reach different conclusions upon the crucial issue, the motion should be denied and the question submitted to the jury. Long v. Clinton Aviation Co., 10 Cir., 180 F.2d 665; Stern v. Dunlap Co., C.A.10, 228 F.2d 939. But it is the province and duty of the court to direct a verdict where the evidence is without dispute or is conflicting but of such conclusive nature that if a verdict were returned for one party the exercise of sound judicial discretion would require that it be set side. Central Surety & Insurance Corp. v. Murphy, 10 Cir., 103 F.2d 117; Farr Co. v. Union Pacific Railroad Co., 10 Cir., 106 F.2d 437; Oklahoma Natural Gas Co. v. McKee, 10 Cir., 121 F.2d 583; Coppinger v. Republic Natural Gas Co., 10 Cir., 171 F.2d 4; McKenna v. Scott, 10 Cir., 202 F.2d 23; Stern v. Dunlap Co., supra.

■ Appellants did not plead or attempt to prove any specific act or acts of negligence on the part of the appellee as the proximate cause of the fire. They rely entirely upon the long established doctrine of res ipsa loquitur. But appropriate application of that doctrine does not change the rule that where the evidence as a whole is insufficient to support a verdict for the complainant, it is the duty of the court to direct a verdict for the defendant.

■ ■ Since jurisdiction of the court was predicated upon diversity of citizenship with the requisite amount in controversy, resort must be had to the law of Kansas to determine whether the facts—established by admissions or evidence—were sufficient to establish actionable negligence on the part of the appellee with resulting liability in damages. It is the general rule in Kansas

that the doctrine of res ipsa loquitur is recognized and applied where it is shown that the agency or instrumentality which caused the injury was at the time under the exclusive management and control of the defendant, and that the accident was such that in the ordinary course of things it would not have happened if those having such management and control had exercised proper care. It is not enough merely to show that the offending agency or instrumentality was under the exclusive management or control of the defendant. It must also be shown that such agency or instrumentality proximately caused the injury. And it must also be shown that the accident was such that in the ordinary course of events it would not have occurred if those exercising management and control of the transport had used ordinary care. Starks Food Markets v. El Dorado Refining Co., 156 Kan. 577, 134 P.2d 1102.

■ The fact that the fire occurred with its resulting destruction of property was not enough to establish liability on the part of the appellee. It was essential that negligence be shown as the proximate cause of the fire. And since the appellants rely upon the doctrine of res ipsa loquitur, it was necessary for them to show that the transport was under the exclusive management and control of the appellee; that it caused the fire; and that the fire was such that in the ordinary course of events it would not have happened if the appellee had exercised care commensurate with the circumstances. The case of Emigh v. Andrews, 164 Kan. 732, 191 P.2d 901, is strikingly apposite. There plaintiff sought to recover damages for the destruction by fire of certain wheat. It was alleged in the complaint that the wheat was being harvested by means of a combine-harvester-thresher; that the defendant had been employed as an independent contractor to haul the wheat in his truck away from the combine-harvester-thresher; and that the truck was under the exclusive control and management of the defendant. It was

further pleaded that while the truck was being operated by the defendant in the hauling of wheat, a fire was started in the stubble of the wheat field; that the fire was started at a point over which the truck had just passed; and that no other persons or vehicles had passed over such point. It was further pleaded that the usual method of hauling wheat away from combine-harvester-threshers and off the premises where it was raised was in trucks; and that when such trucks were maintained and operated in a careful manner, fires did not result from the operation. And it was further pleaded that plaintiffs had not been informed and therefore could not allege the specific act or acts of negligence which caused the fire, but that the negligence of the defendant or his employees was the proximate cause of the fire. The trial court sustained a demurrer to the complaint, and on appeal the judgment was affirmed. In upholding the action of the trial court in sustaining the demurrer, the Supreme Court of Kansas pointed out that the complaint failed to charge that the truck was the agency which caused the fire and failed to charge that the truck would not have caused the fire unless the defendant was negligent in operating the truck or maintaining it in a safe condition. The court placed emphasis upon the point that the plaintiffs sought to establish both of such essential facts by pyramiding one inference or presumption upon another. And the court held in emphatic language that facts essential to recovery cannot be established by such pyramiding of inference upon inference or presumption upon presumption. Here, it was not shown affirmatively that the motor transport was the agency or instrumentality which caused the fire. When Franks and his wife first saw the fire, it was already burning or rolling up around the cab of the transport. They did not see the fire start and did not know its origin. When Perkins first saw fire about the transport the flames were coming up over the cab. He did not purport to testify that the fire originated at or in the truck. There was no direct evidence that the fire started in the truck. Appellants rely upon inference or presumption that the transport was the agency or instrumentality which caused the fire. And there was no evidence of a defective condition of the truck or negligence in its operation. Again, appellants rely upon inference or presumption that the transport was in a defective condition or was improperly operated. These appellants seek to pyramid or impose one inference or presumption upon another to establish facts necessary to constitute liability on the part of the appellee. And liability cannot be established in that manner. Emigh v. Andrews, supra.

The judgment is affirmed.